1          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF PENNSYLVANIA**
2                  **JOHNSTOWN DIVISION**

3

4    **UNITED STATES OF AMERICA,**     )
                                       )
5                  **Plaintiff,**      )    **CASE NO:  11-cr-30**
                                       )
6          **vs.**                     )
                                       )
7    **BRANDON J. BROTHERS,**          )
                                       )
8                  **Defendant.**      )
     _____ )

9

10             **TRANSCRIPT OF HEARING TO CLARIFY**
           **CONDITION OF SUPERVISED RELEASE PROCEEDINGS**
11           **BEFORE THE HONORABLE KIM R. GIBSON**
                      **March 4, 2015**

12

**FOR THE GOVERNMENT:**
13     John Valkovci, Jr., AUSA
       United States Attorney's Office
14     Penn Traffic Building, Ste. 200
       319 Washington Street
15     Johnstown, PA  15901

16   **FOR THE DEFENDANT:**
       Christopher Brown, AFPD
17     Federal Public Defender's Office
       1001 Liberty Avenue
18     1500 Liberty Center
       Pittsburgh, PA  15222-3714
19

20

21

           Proceedings recorded by mechanical stenography,
22   transcript produced with computer.

23   _____
                   Kimberly K. Spangler, RPR
24               United States District Court
               Penn Traffic Building, Ste. 204
25                  319 Washington Street
                    Johnstown, PA  15901

```
 1                         I N D E X

 2                       MARCH 4, 2015

 3

 4   Government's
     Witness:              Direct     Cross     Redirect
 5
     Peter Gawlinski          5         19
 6

 7

 8
     Certificate of reporter                        58
 9

10

11                          *  *  *

12
                       E X H I B I T S
13
     Government's
14   Exhibits:                     Marked    Admitted

15   Exhibit 1                                 13
     Exhibit 2                                 14
16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2        (The proceedings convened on March 4, 2015, commencing at
 3   11:10 a.m.)
 4              THE COURT:  This is the time and place set for
 5   hearing on the motion of defendant to clarify condition of
 6   supervised release.  I will note that that is Document 50, and
 7   then 54 is the response of the United States.
 8              Before we proceed, if counsel would enter their
 9   appearance, please.
10              MR. VALKOVCI, JR.:  Good morning, Your Honor.  John
11   Valkovci on behalf of the United States.  With me this morning
12   is United States Probation Officers Warren Johnston and Peter
13   Gawlinski.
14              MR. BROWN:  Morning as well, Your Honor.  May it
15   please the Court, Chris Brown on behalf of Brandon Brothers.
16              THE COURT:  All right.  Well, good morning to both
17   of you and to the others present today.
18              The nature of the motion is such that I will hear
19   from counsel as to your preference as to how to proceed in
20   terms of -- normally the movant would proceed first, but
21   perhaps it makes sense to do it the other way today.
22              Mr. Valkovci, your position.
23              MR. VALKOVCI, JR.:  Your Honor, perhaps maybe a
24   hybrid approach would be more appropriate in this case.  Given
25   the government's argument in its brief, I can see why the
```

```
 1    Court would be asking that.  However, just so the Court's
 2    clear, I think the government will be abandoning our
 3    jurisdictional argument.
 4            Upon further reflection, I took a further look at
 5    Rule 32.1 of the Rules of Criminal Procedure, and although
 6    31.2(c) talks about modification, when I spent some time
 7    reading the advisory committee notes, the advisory committee
 8    notes with respect to Rule 32.1(b) talks about the probationer
 9    should have the right to apply to the sentencing court for a
10    clarification or change of conditions.  And it goes on to
11    read, "As the committee notes, this is important for two
12    reasons.  And the first reason, Your Honor, I think is
13    applicable here, and that is the probationer should be able to
14    obtain resolution of a dispute over an ambiguous term or the
15    meaning of a condition without first having to violate it.
16            And rather than put Mr. Brothers in a Catch-22
17    situation, the government would simply concede that we're not
18    conceding the term is ambiguous in any way, but we believe
19    that that Rule 32.1, in conjunction with the advisory
20    committee notes, provides the Court with sufficient
21    jurisdiction to entertain his current motion today.
22            Having said that, Your Honor, I would submit to the
23    Court that perhaps the best way to proceed is to have
24    Mr. Brothers place his request on the record and his basis for
25    his request.
```

```
 1              THE COURT:  All right.  Well, I will note that I
 2   agree with your analysis with regard to why it would be
 3   appropriate for the Court to hear the motion, since it appears
 4   to be inappropriate to force the defendant to violate and then
 5   find out if it is a violation or not.  So I agree, so we will
 6   proceed in that manner then.
 7              Thank you.
 8              MR. VALKOVCI, JR.:  Thank you, Your Honor.
 9              THE COURT:  Attorney Brown, you may then proceed
10   with your case.
11              MR. BROWN:  So the Court's aware, I have a new
12   fancy computer.  My new fancy computer does not work with my
13   printer here in the Johnstown office so, unfortunately, I was
14   unable to print my notes for the hearing today, and so I'm at
15   somewhat of a deficit here scrolling through my computer.  So
16   if the Court would be patient with me, I'd appreciate it.
17              Just to lay some foundation for the record,
18   although I think it's fairly clear:  Mr. Brothers was
19   sentenced by this Court June 7th, 2012, to a period of
20   incarceration of six months, followed by 15 years of
21   supervised release.  And that sentence was imposed following
22   his guilty plea to a single count of possession of child
23   pornography.
24              He was released to supervision in August of 2012.
25   And I attached as an exhibit to the motion to clarify
```

1    conditions that we filed, and the reason we're here today,

2    Exhibit A, which is the judgment in that case.  And I did that

3    for the Court's convenience, and I'm sure the Court has looked

4    at it and re-reviewed it before today.  I noted that this

5    imposed many standard conditions, as well as additional

6    conditions.

7           The condition in question is found on page 4 of the

8    J&C.  And I have Exhibit A, which is the J&C, on the monitor.

9    And the highlighted portion is the one that raised some

10   questions between the parties.  I don't know if the Court can

11   see that, if the Court has a copy in front of it.  I will read

12   it into the record.  It says, "The defendant shall participate

13   in a mental health and/or sex offender treatment program

14   approved by the probation officer until such time as the

15   defendant is released from the program by the Court.

16          "The defendant shall abide by all program rules,

17   requirements, and conditions of the sex offender treatment

18   program, including submission to polygraph testing to

19   determine if he has been compliant with the conditions of

20   release.  The probation office is authorized to release the

21   defendant's presentence report to the treatment provider if so

22   required."

23          Mr. Brothers, as I said, was released to

24   supervision in August of 2012, and he did participate in the

25   sex offender treatment program called Project Point of Light.

1    And as reflected in Defendant's Exhibit B, this is a

2    recommendation from that sex offender treatment program saying

3    that he's successfully completed their program and that no

4    further treatment is needed.

5           Following that discharge from that sex offender

6    treatment program, Mr. Brothers was advised by his supervising

7    probation officer -- and I'm going to approximate because I

8    don't know the exact date, but it was the summer -- I believe

9    it was the summer of 2014 that he was required to submit to a

10   polygraph examination.

11          And it is our position, Your Honor, that this

12   Court's ordered conditions of supervision are clear and do not

13   include a condition that he submit to periodic polygraph

14   examinations -- whether they be annual, monthly, weekly,

15   daily, hourly -- once he's discharged from the sex offender

16   treatment program.  That this is a condition that he is not

17   required to observe by this Court and, therefore, it is a

18   condition that the probation office has no authority to

19   enforce.

20          In addition to that, Your Honor, it's our position

21   that the administration of polygraph examinations after

22   someone has been successfully discharged from a sex offender

23   treatment program is tantamount to a modification of

24   conditions of supervision.

25          There was some discussion between myself and the

1    probation office prior to the filing of this motion, and I

2    suggested if probation identified a need for annual polygraph

3    examinations, then why don't they file a modification request.

4    The response that I got -- and I'm paraphrasing, and I hope I

5    understand it correctly -- is that no modification is needed

6    because the polygraph condition is an existing condition, as

7    ordered by this Court, that they have the authority to

8    enforce.

9             And so then, as the Court's identified, there was a

10   weighing of what to do.  Do we wait for a violation and come

11   in front of this Court in a posture that risks Mr. Brothers

12   going to jail, and that's certainly not something that is his

13   desire.

14            So, instead, it was suggested and thought up by my

15   office and suggested by the probation office, to file a motion

16   to clarify this condition in support of our position.  And it

17   is our position that this is not an existing condition, that

18   the Court's intent from the language in its order is that

19   polygraph tests are a condition of a sex offender treatment

20   program that is approved by the probation office.

21            I don't think the probation office is going to come

22   in today and say they're board certified sex offender

23   treatment providers.  This is obviously something outside the

24   United States Probation Office, and that as a condition of

25   that treatment outside the confines of the probation office,

1    that once that treatment is done, is discharged, successfully

2    completed, then the polygraph testing condition is no longer.

3            So that's our position, Your Honor.  And,

4    obviously, the probation office disagrees.  I know the U.S.

5    Attorney's Office is going to support the probation office's

6    position and interpret it in a different way than we do, and

7    that's why we're here.

8            With the Court's permission, that's all I have

9    right now, but I know I'm going to have to respond to

10    arguments made by the government, so I appreciate if the Court

11    would give me an opportunity to respond rather than laying out

12    all my arguments before the government's made any arguments to

13    counter what I've said already.

14            THE COURT:  The government has, in its response,

15    made an extensive number of arguments.  Do you not wish to

16    respond to those as part of your presentation, or do you want

17    to wait?

18            MR. BROWN:  I am prepared to do that.  Whatever the

19    Court prefers.  I am prepared to respond to the written

20    arguments that I received yesterday, or I can wait until the

21    government enunciates them, I mean which is my guess that they

22    will do at the podium.

23            THE COURT:  Well, I will hear from the government

24    at this time, since then you would have not only the written

25    arguments but what they presented today.

1              So, Mr. Valkovci.

2              MR. VALKOVCI, JR.:  Your Honor, to support the

3    government's position we would call United States Probation

4    Officer Peter Gawlinski to the stand.

5              (The witness was placed under oath by Courtroom

6    Deputy Gorgone.)

7              PETER GAWLINSKI, GOVERNMENT'S WITNESS, SWORN

8                      DIRECT EXAMINATION

9    BY MR. VALKOVCI, JR.:

10   Q.   Sir, just so we have a complete record, could you please

11   tell the court reporter your name and spell your last name.

12   A.   Peter Gawlinski.  It's G-A-W-L-I-N-S-K-I.

13   Q.   And you're employed by the United States Probation

14   Office?

15   A.   I am.

16   Q.   In the Western District of Pennsylvania?

17   A.   Yes.  I'm located in the Pittsburgh office.

18   Q.   Do you have any specific role or job within the United

19   States probation office?

20   A.   Specifically, I'm what's considered a cyber crime

21   specialist.  And within that capacity and that role, my

22   caseload is specifically dealing with sexual offenders.

23   Q.   So you're familiar then with the supervision of sex

24   offenders?

25   A.   I am.

1    Q.    Could you please explain what programs or what treatments

2    are available to sex offenders within this district.

3    A.    Within this district we have, I believe, seven contracted

4    sex offender-specific treatment providers.  Within those

5    providers there's different modality, which each provider

6    would use in providing that treatment.

7          But, consistently, the construct of the program would

8    generally be individual therapy, group therapy, polygraph

9    examinations, and there's a number of evaluation tools that

10   they would use at the onset of treatment, and then

11   periodically through treatment.

12   Q.    When you say "periodically through treatment," how long

13   does treatment last?

14   A.    Treatment can -- it's not a set time for a sexual-based

15   offense, because the offense and the behavior is generally

16   ongoing and pervasive in the defendant's life.  So there is no

17   set time.  There is no -- there's no time set at the outset of

18   treatment.  So it could last a year.  It could last six

19   months.  It could go on indefinitely through the period of

20   supervision.

21   Q.    Now, as part of his supervision through the U.S.

22   Probation Office, did Mr. Brothers participate in any type of

23   therapy with one of these contract providers that you referred

24   to earlier?

25   A.    He did.  When Mr. Brothers was released in August of

1    2012, I assumed supervision of his case.  He was referred to a

2    program based in Clearfield, Pennsylvania, called Project

3    Point of Light, and he participated with that program until

4    his discharge in June of 2013.

5    Q.    I'm going to show you what I've marked as Government

6    Exhibit Number 1 for identification purposes.  Do you

7    recognize that?

8    A.    I do.

9    Q.    Could you tell the Court what that is, please.

10   A.    That's a letter from Project Point of Light addressed to

11   me.  Specifically that is referencing Mr. Brothers, that he

12   has successfully completed the four phases of treatment within

13   Project Point of Light's program.

14         Project Point of Light specifically is one of our vendors

15   that uses a phase system, where they have a structured program

16   that they want certain things to be accomplished, and they

17   break them down into phase one through four.

18   Q.    So there are four phases within that treatment regimen?

19   A.    Yes.

20   Q.    And did Mr. Brothers complete all four phases?

21   A.    To my knowledge, yes.

22   Q.    And the letter that I've given you and identified as

23   Government Exhibit 1, did you receive that from Project Point

24   of Light?

25   A.    I did.

```
1    Q.    When did you receive that?

2    A.    From the date stamp, it appears July 24th, 2013.

3              MR. VALKOVCI, JR.:  Your Honor, I move for the

4    admission of Government Exhibit 1.

5              MR. BROWN:  No objection.

6              THE COURT:  One is admitted without objection.

7    BY MR. VALKOVCI, JR.:

8    Q.    And Government Exhibit 1, who sent that to you?

9    A.    Project Point of Light.  Specifically Patricia Clouser.

10   She is the licensed social worker that worked with

11   Mr. Brothers.

12   Q.    And what does the letter say?

13   A.    Do you want me to read the entirety or --

14   Q.    No.  Was there a portion that talks about his discharge

15   from the Point of Light program?

16   A.    The first paragraph says that "Please be advised that

17   Mr. Brothers has successfully completed the four phases of

18   treatment of the Project Point of Light sex offender program."

19          It goes on to say that he's recommended that he continue

20   with counseling with a clinician equipped to help him cope

21   with underlying behavorial health concerns.  It continues to

22   report that he continues to have a rigid thinking pattern, in

23   particular regarding issues that involve sex and sexual

24   behavior, and he has a tendency to intellectualize.  He

25   refused to include his family in the treatment process.
```

1        It goes on to say that he's agreed to continue treatment

2   with his current therapist, whom he reported seeing on a

3   biweekly basis.

4   Q.   So even though he completed the four phases within

5   Project Point of Light, they're recommending further

6   treatment?

7   A.   They are, yes.

8   Q.   I'm also going to show you what I've marked as Government

9   Exhibit 2 for identification.   Do you recognize that?

10  A.   I do.

11  Q.   Can you tell the Court what that is, please.

12  A.   It's a probation form 46, which simply is a monthly

13  treatment report provided from our vendor, Project Point of

14  Light, referencing Mr. Brothers.   And we receive these on each

15  of our cases that's in treatment.   It kind of apprises of the

16  progress or lack of progress.

17       But this one in particular is from July of 2013, and says

18  that Mr. Brothers is discharged, but continued mental health

19  treatment is recommended.

20            MR. VALKOVCI, JR.:   Your Honor, I would move for

21  the admission of Government Exhibit 2.

22            MR. BROWN:   No objection.

23            THE COURT:   Two is admitted without objection.

24  BY MR. VALKOVCI, JR.:

25  Q.   So Mr. Brothers was released by Project Point of Light

1   from their four-phase program, right?

2   A.    Yes, he was.

3   Q.    As his probation officer, did you ever release him from

4   any treatment program?

5   A.    No, I did not.  And maybe I should clarify.  He was not

6   recommended by the provider to continue with ongoing treatment

7   at their facility, but in no way did I feel that he was

8   completed with sex offender treatment or mental health

9   treatment.  He continued to see, I believe, Dr. Thompson on

10  his own.

11  Q.    If you could please pull up the screen that's to your

12  left.  This is the same document that I believe Mr. Brown had

13  up earlier, and I draw your attention to this paragraph here

14  because this is the one that's in question today.  And it

15  states that "defendant shall participate in a mental health

16  and/or a sex offender treatment program."

17        So there's two things.  He's required to participate in

18  mental health and sex offender, or mental health or sex

19  offender.

20        In Mr. Brothers' case which is it, "and" or "or"?

21  A.    I would say that he completed -- or participated in both.

22  Throughout the course of my supervision with Mr. Brothers he

23  was attending Project Point of Light, and he was seeing

24  Dr. Thompson, as well as some faith-based groups as well.

25  Q.    Because he was released by Project Point of Light did you

1    close him out as a supervisee?

2    A.   No, we do not.

3    Q.   Why don't you?

4    A.   Because we keep the contract open because, number one, we

5    continue to have maintenance polygraphs once they're completed

6    with the phase work.  But, additionally, we keep that program

7    open because he may need to go back into treatment.

8         Like I said before, the treatment -- they may have

9    completed or attained some goals that were met or sought in

10   the group in individual sessions, but over the course of time

11   the probation officer may see something that indicates that an

12   offender is having a difficult time, or there may be some

13   things going on that we feel may require him to go back into

14   treatment.  So we do not close them out.

15   Q.   When you said you "keep the contract open," does that

16   mean the contract with Project Point of Light remains open?

17   A.   Yes.

18   Q.   Okay.  Now, from a risk of assessment standpoint from the

19   supervising probation officer, tell the Court what changes

20   because he completed Project Point of Light.

21   A.   Generally, nothing.  As far as our risk assessment, we

22   have a standardized risk assessment tool that for sex

23   offenders we do every six months.  His completion with

24   treatment doesn't change that risk assessment score.

25        Additionally, whether he scores out -- wherever he falls

1   into that range, we continue to supervise sex offenders as a

2   high-risk case, and that doesn't change whether they've

3   completed sex offender treatment or not.

4   Q.   So what you're saying is then that the level of

5   supervision or his supervision level hasn't changed either

6   because he completed Project Point of Light.

7   A.   Not at all.  They still remain a high case.

8   Q.   The treatment of a sex offender with the probation

9   office, does it just involve you as his probation officer?

10  A.   No.  The way that the national level and the way that

11  it's recommended -- I believe the term that's in vogue now is

12  "best practices" -- generally involves what they call a

13  containment model.  And within that containment model is --

14  it's a triangulation between the probation officer, the

15  treatment provider or clinician, and a polygrapher.

16       And if you were to diagram it out on a sheet of paper,

17  the defendant would be in the middle, with the three sides,

18  you know, representing those other entities.  Without the

19  three sides you basically -- if you think of it as a table,

20  you're knocking one of the legs out.  And without all three of

21  the legs, the table's going to fall down.

22       So, you know, what we generally do is I would see

23  Mr. Brothers, or any other sex offender, regularly at their

24  home, at their employment, in the community.  I would confer

25  with the treatment provider.  They would talk to me about what

1    is going on, in their opinion, what, you know, what

2    Mr. Brothers, for example, would be saying to them.  We would

3    kind of compare notes, go back and forth to see if things are

4    meshing.  You know, I would address any concerns, something

5    maybe I saw at his house.  She would address with me something

6    that maybe he was saying in treatment.

7         And then periodically a polygrapher would become involved

8    to see what he's telling me, what he's telling the clinician

9    is really true.

10   Q.   So as his supervising probation officer then, have you

11   recorded him as having satisfied this condition of supervision

12   that he should participate in a mental health and/or sex

13   offender treatment program?

14   A.   Have I reported it to the Court?

15   Q.   Yes.

16   A.   No.

17   Q.   In your supervision of him, has he satisfied that

18   condition?

19   A.   He's completed the phase work but he's not -- in my

20   opinion, he's not done with treatment or he's not -- he's not

21   finished being a sex offender case.  It remains at large until

22   the time that he's done with supervision.

23            MR. VALKOVCI, JR.:  Your Honor, I have no further

24   questions at this time.

25            THE COURT:  Attorney Brown.

```
1                      CROSS-EXAMINATION
2    BY MR. BROWN:
3    Q.    Good afternoon, sir.
4    A.    Good afternoon.
5    Q.    You're a probation officer at the United States Probation
6    Office for the Western District of Pennsylvania, correct?
7    A.    Yes.
8    Q.    And your job is a PO, right?
9    A.    Yes, it is.
10   Q.    You're not a board certified sex offender treatment
11   provider; am I correct?
12   A.    No, I'm not.
13   Q.    Would it be fair to say that a main portion of your role
14   as a probation officer is to enforce conditions that a judge
15   imposes?
16   A.    Yes, it is.  As well as the protection of the public.
17   Q.    And one of the conditions that has -- or the condition
18   that is the source of some questioning is this "sex offender
19   and/or mental health treatment" condition, right?
20   A.    I understand that to be why we're here today, yes.
21   Q.    So we're clear; Mr. Brothers is currently in mental
22   health care, right?
23   A.    I'm not supervising Mr. Brothers at this time so I can't
24   answer that, but it is my understanding that he is.
25   Q.    Project Point of Light is one of your seven treatment
```

```
 1   providers in the Western District.
 2   A.    Yes, it is.  It's the closest one geographically to
 3   Mr. Brothers' home.
 4   Q.    And are they a board certified sex offender treatment
 5   provider?
 6   A.    To my knowledge, yes.
 7   Q.    The United States Probation Office for the Western
 8   District of Pennsylvania is not a board certified sex offender
 9   treatment program.  Am I right?
10   A.    No, we do not provide treatment services.
11   Q.    Okay.  You mentioned that Mr. Brothers, in your opinion,
12   was not discharged, and that he would be part of a sex
13   offender treatment program throughout the 15 years of his
14   supervision.
15        Did I capture that correctly?
16   A.    Essentially, yes.  That he may not be going to a location
17   on a weekly basis for treatment at any given time, but at any
18   point should we see something that needs to be addressed we
19   would contract that or refer him back to one of our providers.
20   Q.    So an analogy can be made to someone who has drug
21   treatment conditions, can it not, where they participate in
22   either inpatient or outpatient treatment, are discharged, but
23   because the condition exists you leave that option open in
24   case they have a relapse.  Am I right?
25   A.    That would be a good analogy.
```

```
1   Q.   So do you know right now if Mr. Brothers is participating
2   in one of your seven treatment programs in the Western
3   District of Pennsylvania?
4   A.   To my knowledge, his last treatment was at Project Point
5   of Light.
6   Q.   And that was in July -- he was discharged from that
7   program in July of 2013, right?
8   A.   I think he was -- the discharge was somewhere around
9   July, yes.  July of 2013.
10  Q.   Okay.  Referring to Government's Exhibit 1, this letter
11  is from Patricia Clouser, who is a licensed social worker at
12  Project Point of Light.  Am I right?
13  A.   Yes.
14  Q.   Can you tell me anywhere in this letter where it says
15  that Mr. Brothers is recommended by that treatment provider to
16  continue with polygraph exams.
17  A.   No.  It doesn't say anything about polygraphs.
18  Q.   And in Government's Exhibit 2 there is a monthly
19  treatment report that looks like it's been signed by
20  Ms. Clouser, and above it says "Discharged, continued mental
21  health treatment recommended."  Correct?
22  A.   Yes.
23  Q.   And, to your knowledge, is this her recommendation, or
24  Project Point of Light's recommendation?
25  A.   I believe it is.
```

Q.   And anywhere in that box does it say continued polygraphs recommended?

A.   No, it does not.

Q.   All right.  Now, it does recommend continued mental health counseling, right?

A.   It does.

Q.   And you made a distinction, when you were asked some questions by Mr. Valkovci, between mental health treatment and sex offender treatment.  Right?

A.   I'm not sure exactly what you mean -- referring to but --

Q.   I'm sorry.  Let me refer to the Court-ordered conditions here.  You'll agree with me, will you not, that it says "The defendant shall participate in a mental health and/or sex offender treatment program."  Right?

A.   Yes.

Q.   So it has "mental health program and/or sex offender treatment program."  Right?

A.   Uh-huh.

Q.   So as a probation officer enforcing that condition, would you consider that to be two separate options for you as a PO for your supervising defendant?  You can send them to mental health treatment or sex offender treatment?

A.   I would read that that I could send him to mental health or sex offender treatment or mental health and sex offender treatment.

1   Q.   Exactly.  So two separate entities.  You have mental

2   health treatment providers that don't provide sex offender

3   treatment.  Am I right?

4   A.   We do.

5   Q.   And you have sex offender treatment that necessarily

6   includes mental health treatment, but it doesn't include

7   mental health treatment outside the sex offender context,

8   right?

9   A.   Could you repeat that.

10  Q.   Sorry.  Sometimes I do that.

11       In a sex offender treatment program, is it your

12  understanding the seven treatment providers that your office

13  contracts with, they all provide sex offender treatment which

14  may necessarily include mental health treatment, but they

15  don't just provide mental health treatment for people who are

16  non-sex offenders?

17  A.   I don't know for certain that that is true, but all of

18  our contract providers do provide both services.

19  Q.   Okay.  My point is, you have two options as a probation

20  officer -- maybe three options:  Mental health treatment,

21  option one; sex offender treatment, option two; and mental

22  health and sex offender treatment.  Right?

23  A.   I would agree with that.  Part of the reason is some

24  providers don't specifically consider themselves "sex offender

25  treatment."  They may have a contract to provide mental health

1   treatment, but it would have to -- for us to send a sex

2   offender there, they would be providing sex offender

3   treatment.

4   Q.   My next question is, you said that when Mr. Brothers

5   finished the board certified sex offender treatment program --

6   the four phases I think you called it, Project Point of

7   Light -- and they send you and Mr. Brothers a piece of paper

8   saying he successfully completed, no further treatment needed,

9   you said "I did not release him from the program" or something

10  to that effect.  Am I right?

11  A.   You're right.

12  Q.   Okay.  So the board certified sex offender treatment

13  provider said he was done, and your office is saying he's not

14  done?

15          MR. VALKOVCI, JR.:  Objection, Your Honor.  I think

16  counsel's mischaracterizing what that letter is.  They're not

17  saying "he's done."  What the letter says specifically is he's

18  completed the four phases of their treatment regimen.  That's

19  what it says, not that he's done.  I think that's

20  oversimplifying this.

21          THE COURT:  Well, rather than rule on that

22  directly, I will ask the witness to describe for the Court his

23  interpretation of what that letter meant and how he responded

24  to it in his supervision.

25          Go ahead, sir.

1          THE WITNESS:  What this letter means to me is that

2   at this time Mr. Brothers wouldn't be subject to going to

3   weekly or biweekly counseling sessions at Project Point of

4   Light.  Our contract would remain open to provide services,

5   should they become necessary again, and also to provide

6   polygraph services at the appropriate times.

7          Now, the way that we operate is that once they're

8   done with the phase work and they're no longer going to

9   counseling on a scheduled basis, we would have the provider

10  perform maintenance polygraph examinations.  And they're

11  designed to monitor compliance with the conditions of their

12  release.

13         For sex offenders specifically, many times those

14  questions may have to do with sexual behaviors or things of

15  that nature.  Also, were they accessing unmonitored computers

16  or unmonitored cell phones or having communications or contact

17  with minors.  That's not something that the probation officer

18  would either be aware of or feel was appropriate.

19         THE COURT:  Let me ask you this then; there seems

20  to be a difference of interpretation between counsel:  Was the

21  Project Point of Light sex offender treatment program the sex

22  offender treatment program that is in the conditions, in your

23  mind, or is it part of a treatment program?  Because I am not

24  quite sure how you view this.

25         THE WITNESS:  Do I feel that the provider?

1          THE COURT:  The program he went through at Project

2    Point of Light, was that the sex offender treatment program

3    that is referenced in the conditions of supervised release, or

4    is it part of a larger overall program?  I would just like to

5    know what your approach to that is.

6          THE WITNESS:  My approach is that it's a

7    collaborative effort.  The contract provider's providing the

8    services that we're not licensed or we're not the

9    professionals to do.  But the program as a whole --

10          THE COURT:  When you say "program," tell me what

11    you mean by "program."

12          THE WITNESS:  For me, managing sex offenders is a

13    larger-than-one-person endeavor.  And as far as my view is the

14    program itself involves the three people or three entities

15    that I described earlier in that containment model.  It's the

16    probation officer, it's the treatment provider, and the

17    polygrapher working in concert to try and manage risk and

18    rehabilitate within the community.

19          Now, that Project Point of Light is somewhat

20    removed at that point when he's no longer going to do an

21    individual or a group session.  That's where the -- where I

22    need to rely on the polygrapher to assist in monitoring the

23    compliance.  It would be impossible for me to monitor -- I

24    have a caseload of 45, 45 people over eight counties, 24 hours

25    a day.

```
1              So the program itself, to answer your question,
2    Your Honor, I look at the treatment provider as one part of a
3    larger program.
4              THE COURT:  I think I understand.
5              Mr. Brown, go ahead.
6    BY MR. BROWN:
7    Q.   So I understand that what you're saying is a program in
8    your eyes, are you aware if that is your office's position?
9    A.   Can I speak for the chief at this point, I don't believe
10   I can.  But that is the way that I've been doing business for
11   a number of years.
12   Q.   Well, let me ask you this:  Is there a definition that
13   your office has of "sex offender treatment program"?  Because
14   I think maybe where some of the dispute lies is one person may
15   view sex offender treatment program as Project Point of Light,
16   whereby your definition, sex offender treatment program is
17   supervised release for a sex offender.
18        And so is there a policy or a definition that you have as
19   a PO that says this is what a sex offender treatment program
20   is?
21   A.   I believe as far as maybe our contract there would be a
22   definition of what we would find to be an acceptable treatment
23   provider or treatment program.  I don't know of any specific
24   language or policy statement that would reference what a
25   program is.
```

1    Q.   Given your interpretation of what a sex offender

2    treatment program is -- well, let me back up.

3         This sex offender treatment program condition is a

4    boilerplate condition that is included in every single

5    possession of child pornography case.  Am I right?

6    A.   I would say 97 percent, yes.  There are some cases that

7    it may not be imposed at the onset, but our office would

8    likely pursue a modification to include that.

9    Q.   Okay.  And you'll agree with me that treatment conditions

10   for convicted sex offenders is an evolving science.  Am I

11   right?

12   A.   It's always evolving, yes.

13   Q.   That many of these conditions that are here weren't here

14   ten years ago?

15   A.   I've been with the agency for eight years, so I can't say

16   what was here ten years ago.  But in my time they have been

17   updated.

18   Q.   And often your office will ask a person convicted in

19   these circumstances, who does not have some of these

20   conditions, to agree with a modification to some of these

21   conditions.  Am I right?

22   A.   That's correct.

23   Q.   Now, you'll agree with me that this condition itself does

24   not say explicitly that periodic polygraph exams are permitted

25   as a condition?

```
1           Would it be easier if you saw a hard copy?
2    A.   No, I can read it.
3           It does not say "periodic," no.
4    Q.   Given that someone, under your definition of what sex
5    offender treatment program is, if they have a 15-year period
6    of supervised release, and you're saying that sex offender
7    treatment program is the period of supervised release, then
8    they are in a sex offender treatment program for the entire
9    period of supervised release.  Am I right?
10   A.   We would have a contract open with a provider likely for
11   the entire period of the supervised release, if so far as only
12   to provide polygraph services.
13   Q.   And you said that that's because -- or maybe in part
14   because supervising sex offenders that they're at high risk,
15   right?
16   A.   Yes.
17   Q.   And that's all sex offenders?
18   A.   I believe --
19   Q.   Or --
20   A.   As far as our classification, yes, high risk.
21   Q.   Let's talk about Mr. Brothers.
22          Do you have a score of how high risk he is?
23   A.   I don't have that information in front of me.
24   Q.   What do you use, a Static-99?
25   A.   Well, because Mr. Brothers' offense wasn't a hands-on
```

1    offense, a Static-99 I don't believe would apply.

2    Q.    Now, you call these maintenance polygraphs, right?

3    A.    Yes.  Maintenance and/or monitoring.

4    Q.    I understand the term of art, but you would agree with me

5    again that the idea or concept of maintenance polygraphs is

6    not explicitly spelled out in that condition.  Am I right?

7    A.    No, it's not.  It's a more broad generalization to submit

8    to polygraph tests.

9    Q.    And are maintenance polygraphs something that are done in

10   every single sex offender case once someone is discharged from

11   a sex offender treatment -- one of the seven sex offender

12   treatment programs?

13   A.    Are they done on every case?  They should be, yes.

14   Q.    They should be.  In your probation officer opinion, do

15   you know if they are?

16   A.    I can't say that they are, because I don't have all of

17   the sex offender cases.  It is our policy that sex offender

18   cases should be subjected to maintenance or monitoring

19   polygraphs annually.

20   Q.    You talked about the treatment model; probation officer,

21   clinician, and polygrapher.  Where did you learn about that

22   treatment model?

23   A.    That's been -- I've been supervising sex offenders for

24   probably three and a half years with the federal system, and

25   as a county probation officer throughout the eight years I was

```
 1   there.  That's always been a model that we've used.  I've
 2   heard about it at national trainings, local trainings.
 3   Q.   I'm not trying to put you on the spot, but I assume you
 4   don't have at your disposal the empirical evidence that this
 5   is the treatment model in these instances?
 6   A.   No, I do not.
 7   Q.   This is just how you do it?
 8   A.   This is how I was taught to do it, and how we have
 9   operated.
10   Q.   And, again, this treatment model is one that's applied to
11   all sex offender cases?
12   A.   Generally, yes.
13   Q.   So it's not particular to an individual?  Like it's not
14   particular to Mr. Brothers, but not at the exclusion of some
15   of the sex offenders, but it's all sex offenders?
16   A.   That's the policy, yes.
17            MR. BROWN:  Your Honor, may I take a minute to look
18   at my computer and see if there are any other questions I need
19   to ask?
20            THE COURT:  Yes.
21            MR. BROWN:  Your Honor, I don't think I have any
22   other questions at this time.
23            THE COURT:  All right.  Thank you.
24            Mr. Valkovci, redirect.
25            MR. VALKOVCI, JR.:  No, Your Honor.  Thank you.
```

1          THE COURT:  All right, you can step down, sir.

2          MR. VALKOVCI, JR.:  Your Honor, I have no

3   additional evidence to present to the Court, just argument.

4          THE COURT:  All right.  Mr. Brown, are you going to

5   present any witnesses?

6          MR. BROWN:  No, sir.

7          THE COURT:  Then we will hear argument then.

8          MR. VALKOVCI, JR.:  Your Honor, as I stated in my

9   brief, and the government would incorporate by reference the

10  brief it filed with this Court in response to Mr. Brothers'

11  motion to clarify, regardless of how Mr. Brothers chooses to

12  define the term "program," regardless of how the government

13  chooses to define the term "program," one thing remains clear:

14  There is no dispute as to the phrase "until such time as the

15  defendant is released from the program by the Court."

16          As Mr. Gawlinski testified, as an arm of the Court,

17  he has not released Mr. Brothers from any program, whether you

18  want to define it as mental health and sex offender, whether

19  you want to define it as mental health or sex offender,

20  whether you want to define the program as Project Point of

21  Light, or whether you want to define the program as the

22  15-years term of supervision, it's moot.  Because until such

23  time as this Court releases him from that program, regardless

24  of how it's defined, these conditions apply.  Period.  That

25  should be the end of the discussion here.

1      But we're going to deal with a tortured

2  interpretation of the term program, that it's limited to a few

3  sessions at Project Point of Light, and that if for some

4  reason -- or when he is released from that program, then all

5  the conditions cease to exist.

6      Your Honor, as set forth in the government's brief

7  as an additional argument, we have Standard Condition Number

8  4.  Standard Condition Number 4 that was imposed on

9  Mr. Brothers requires him -- and I have it here -- "he shall

10  answer truthfully all inquiries by the probation officer and

11  follow the instructions of the probation officer."  It's on

12  page 5 of 6 of the judgment order.  He was instructed to

13  submit to polygraph testing.  Standard Condition Number 4

14  clearly contemplates that.

15      There would never be a dispute if a probation

16  officer ordered a supervisee or a probation officer to submit

17  W-2 forms, or bank statements, or income tax returns, or a

18  letter from an employer to document certain things that are

19  supposed to be happening.  It's a way that you monitor them,

20  because they're reasonably related to why there is

21  supervision.

22      Now, of course, the order, the directive has to be

23  reasonably related to why they're being supervised.  If a

24  probation officer would go to a supervisee and say, "I'm

25  ordering you to go buy a navy blue suit," of course that

1    wouldn't be applicable.  But in a situation like this, it

2    gives the probation officer, as an arm of the Court, the

3    authority to do what is necessary to see that all the

4    conditions of supervision are being complied with.

5            It's a second reason why the Court should uphold

6    it, because we don't even need to get to the condition with

7    respect to program, Your Honor, because under Standard

8    Condition Number 4 the probation officer has authority to

9    request this.

10           Is a polygraph reasonably related to sex offender

11   treatment, to sex offender supervision?  The Third Circuit has

12   repeatedly recognized that, and those cases are set forth in

13   the government's brief.  It's an important tool.  It's a vital

14   tool to be used by probation officers when supervising sex

15   offenders.

16           Then we go down, as another basis for the

17   government's position we look at the additional conditions of

18   supervision imposed by the Court.  Mr. Brothers is not

19   permitted to use a computer or electronic device to access

20   child pornography or communicate with any individual or group

21   for the purpose of promoting sexual relations with children.

22           Mr. Brothers is not to possess or access with the

23   intent to view any materials, including pictures, photos,

24   books, writings, drawings, videos, or video games depicting

25   and/or describing child pornography.

1        He is not permitted to associate with children

2   under the age of 18.  He is required to consent to the

3   installation of software or hardware to monitor his computers

4   and electronic devices.  And as quoted from the judgment

5   order, "To confirm the defendant's compliance with this

6   condition."

7        He is also required to consent to periodic

8   unannounced examinations of his computers and electronic

9   devices by probation officers.  Again to quote the judgment

10  order, "To confirm the defendant's compliance with this

11  condition."

12        He is required to notify his employer of the nature

13  of his conviction.  If his employment requires the use of a

14  computer and, correspondingly, the probation officer is

15  directed by this Court to -- again quoting the judgment order

16  -- "confirm the defendant's compliance with this notification

17  requirement.  And he is required to provide the probation

18  office with accurate information about his entire computer

19  system and electronic devices, to include the name of his

20  internet service provider and all passwords used.

21        If we extrapolate Mr. Brothers' argument that he's

22  completed Project Point of Light and, therefore, the program

23  is over, does that mean, Your Honor, that he is now then

24  permitted to possess or access with intent to view child

25  pornography?  Does that mean that he can now use a computer or

1    electronic device to access child pornography?  Does that mean

2    because he completed that program that he can associate with

3    children under the age of 18?  Can he refuse to consent to

4    have the installation of software or hardware on his

5    computers, since he's already completed the program?  Can he

6    refuse to periodic unannounced searches of his computers and

7    electronic devices?  Is he relieved of the obligation to

8    provide truthful information to his probation officer?

9         I submit the answer to every one of those

10   questions, Your Honor, is clearly no.  But why is it no?

11   Because the program is ongoing.  These conditions, in the

12   broadest possible sense, are designed to ensure compliance, to

13   protect society from Mr. Brothers.  This Court imposed a term

14   of supervision of 15 years because at that moment the Court

15   felt that was what was appropriate.  Not more than necessary,

16   but appropriate.

17        Mr. Brothers ignores Standard Condition Number 4.

18   Mr. Brothers ignores all these other conditions and focuses on

19   one only.  Unfortunately, he doesn't even focus on the entire

20   thing, Your Honor.  He parses the language and employs a very

21   myopic definition of the term "program."  He ignores the term

22   "until released by the Court."  Again that phrase, Your Honor,

23   settles the issue.

24        He has not been released.  Therefore, he is still

25   subject to the terms of the program, regardless of how it's

1   defined, including polygraph testing.

2           Furthermore, Your Honor, when we look at how the

3   polygraph language is used, Mr. Brown asked on

4   cross-examination whether it said specifically random

5   polygraphs or maintenance polygraphs.  No, it doesn't say

6   that, Your Honor.  But the Supreme Court just last week in an

7   interesting decision -- the facts are more interesting than

8   the plurality decision in the case, Your Honor, because it

9   dealt with whether or not an undersized red grouper is a

10  tangible object.  So it's kind of a whimsical type opinion.

11  I'm not citing it for the premise that an undersized grouper

12  is not a tangible object, Your Honor.  What I'm citing that

13  for in the part of the plurality opinion in *Yates* -- and the

14  citation is set forth in the government's brief -- is that we

15  have to look at not only the word itself or the definition, we

16  have to look at the context in which the word is used.  The

17  specific context, and then also the broader context.

18           So we have a three phase here.  We look at the

19  definition, then we look at the context in which it was used.

20  Many, many years ago -- or I'll say decades, Your Honor, I'll

21  admit it -- decades ago when I was in law school I remember

22  that old Latin phrase -- I don't want to mispronounce it, but

23  what it actually means is, a word is known by the company it

24  keeps.  That's exactly what the Supreme Court recognized in

25  *Yates*.

1          If we take a look at the definition of "programs"

2     as cited in the government's brief, Webster's Ninth New

3     Collegiate Dictionary says it's a plan or a system under which

4     action may be taken toward a goal, a cirriculum.  It's broad.

5          The plan or system under which Mr. Brothers must

6     take action toward a goal is his period of supervision.  The

7     goal is to complete the period of supervision.  That's the

8     plain meaning of the word "program," Your Honor.

9          Mr. Brothers, in essence, is coming before the

10    Court and trying to -- attempting desperately -- to inject

11    ambiguity where none exists.  It's plain.

12         But let's go to step two.  Under *Yates* it tells us

13    that we are to look at the specific context in which it was

14    used.  The specific context, Your Honor, states that "the

15    defendant shall abide by all program rules, requirements, and

16    conditions of the sex offender treatment program, including

17    submissions to polygraph testing, to determine if he is in

18    compliance with the conditions of release."

19         Not to determine if he is in compliance with the

20    conditions of the sex offender treatment program.  Not to

21    determine if he is in compliance with the four stages, or four

22    phases, of Project Point of Light, but to determine if he is

23    in compliance with the conditions of release.  Which include

24    the standard conditions, which include all the additional

25    conditions imposed by the Court.

1          If we were to accept Mr. Brothers' myopic view of

2   the term "program," it would render that phrase superfluous.

3   The Supreme Court and many other courts, Your Honor, have

4   recognized that you should not interpret any type of statute

5   for language, if that interpretation would render superfluous

6   something else.  It would mean that language is meaningless

7   then, Your Honor.  The language that reads "To determine if he

8   is in compliance with the conditions of release" becomes

9   meaningless.  It has no import whatsoever.  So to apply that

10   kind of a tortured construction of the term "program" that

11   would in essence render moot, render surplusage, should not be

12   accepted or countenanced by this Court.

13          "To determine if he is in compliance with the

14   conditions of release."  To determine, Your Honor, in essence,

15   whether he has access to or possessed child pornography.

16   That's a condition of release.  To determine whether he has

17   had contact with a child under the age of 18 years.  That's a

18   condition of release.  To determine whether he has answered

19   truthfully all inquiries and provided truthful information to

20   his probation officer.  That's a condition of release.  That's

21   what that is designed to do in its plain meaning and in its

22   specific context.

23          Let's look at the broader context though, Your

24   Honor, of all the conditions of supervision.  Let's ask

25   ourselves, Why did the Court impose all of these conditions?

 1   Why did the Court choose 15 years?  Because they are necessary

 2   to supervise Mr. Brothers.

 3            Your Honor, it's interesting, because it's not just

 4   the Court's position on this.  The Court was here at

 5   Mr. Brothers' sentencing when Mr. Brothers called as their

 6   expert witness Dr. Pass.  I have a copy of the transcript of

 7   Dr. Pass's testimony.  One of the questions asked by

 8   Mr. Gerson, who was Mr. Brothers' attorney during the

 9   sentencing hearing, Mr. Gerson says "Finally, Doctor, do you

10   have an opinion as to Brandon's risk for sexual offense

11   relapse moving forward?"

12            Doctor said Yes.

13            Mr. Gerson said "And moving forward, are you

14   indicating to the Court that relapse risk is low" -- and this

15   is the important part -- "provided that he maintain some type

16   of maintenance program on the structured, not necessarily with

17   you, but with someone who can maintain a long-term structured

18   sex offender treatment that you spoke of?"

19            And the answer by Dr. Pass was Yes.

20            As Dr. Pass went on to testify under oath, "So in

21   order to maintain that low risk level, compliance on a regular

22   maintenance program, a structured sex offender treatment,

23   would be required.  It would be a management issue.

24   Paraphilia is a disorder that is not cured, it's managed.  And

25   Mr. Brothers will need to manage that part of his sexuality in

```
1    a healthy way."

2              That's why the conditions of supervised release

3    were imposed by this Court.  That's why he's on a period of

4    supervision of 15 years.

5              In the broader context, Your Honor, the conditions

6    imposed by the Court, including the installation of software

7    for the reason as stated in the order, "To confirm his

8    compliance with this condition."

9              A condition was that he consent to periodic

10   unannounced searches.  Again, the reason was very clearly set

11   forth by the Court, "To confirm the defendant's compliance

12   with this condition."

13             To notify his employer.  And then the probation

14   officer was directed by the Court to go confirm with the

15   employer that he'd actually done that.

16             As we go through it, Your Honor, the fundamental

17   objective of this supervision is for the probation officer to

18   ensure Mr. Brothers is compliant with the conditions of his

19   release.  To interpret the polygraph testing language in this

20   broader context, Your Honor, clearly demonstrates its

21   application throughout the entire term of supervision.

22             If we were to accept Mr. Brothers' definition or

23   interpretation of the word "program," Your Honor, we would

24   have to ask, Your Honor, why then would the Court impose these

25   other conditions?
```

1    Without polygraph testing, Your Honor, there is no

2   way to ensure Mr. Brothers' compliance with fundamental

3   conditions of his release.  And as I argue in my brief, Your

4   Honor, it would be incongruent for this Court to impose these

5   conditions and then deprive the probation officer of the very

6   means by which they need to confirm compliance with those

7   conditions.  The Court should not accept that kind of a

8   tortured interpretation of the word "program."  It should not

9   be so limited, Your Honor.

10    Your Honor, in sum, the condition that he comply

11   with polygraph testing is rooted in Standard Condition Number

12   4.  To the extent we look at the language and the additional

13   condition that's put up on the overhead projector right now,

14   Your Honor, the plain meaning of the word "program" is clear.

15   The specific context in which that word is used, because it

16   references to determine if he is in compliance with the

17   conditions of release, is clear.  And the broader context of

18   that provision with all the other provisions of supervision is

19   clear.

20    "Program" means the entire period of supervision.

21   There are different phases and facets to the program.  Some of

22   those phases and facets, Your Honor, may require Mr. Brothers

23   to seek inpatient treatment, to seek further counseling.  It's

24   an ongoing process.  It's an ongoing program.  It doesn't

25   simply end because he was discharged from the four-phase

1    program or the four-phase treatment regimen at Project Point

2    of Light.

3            But at the end of the day, Your Honor, regardless

4    of how Mr. Brothers chooses to define it, he has not been

5    released by the Court.

6            Thank you.

7            THE COURT:  Attorney Brown.

8            MR. BROWN:  Your Honor, before I make argument,

9    there has been at least -- the government's alluded to the

10   fact that Mr. Brothers is either not complying with probation

11   or -- we come to the Court in a non-confrontational posture,

12   asking the Court to define or to tell us what it meant,

13   because I think the Court can see why one person may view what

14   this paragraph means differently than another.  And the bottom

15   line is it's what did the Court intend.

16           Mr. Brothers has, as far as I know, been absolutely

17   totally compliant on supervision.  Had he not been, I'm sure

18   that he would be here with different evidence being presented.

19   He is not here to inject ambiguity where none exists.  The

20   condition, frankly, I think the Court can read, it's very

21   clear in that the word "program" is not a word that's taken in

22   isolation.  It's part of a series of words, "sex offender

23   treatment program."  And given the fact that it's connected

24   with those words, it takes on a different meaning than the

25   word "program" by itself.

1          If the Court looks at it, and it says "The

2    defendant shall participate in a mental health and/or sex

3    offender treatment program approved by the probation officer."

4    That suggests an outside entity.  The probation officer's

5    testified he's not board certified nor is his office a board

6    certified sex offender treatment program.  So they necessarily

7    have to approve -- he said they have seven programs in the

8    Western District that they approved for the treatment of

9    persons who are sex offenders.  That is what a sex offender

10   treatment program is, not supervised release.

11         You know, the Federal Judicial Center defines what

12   supervised release is, and it says "Supervised release is a

13   criminal sentence in which the offender is placed under court

14   supervision for a specified period of time, but is allowed to

15   remain in the community.

16         "Like offenders placed on probation, offenders

17   placed on supervised release are supervised by probation

18   officers and are required to observe certain conditions of

19   release."

20         Conditions imposed by this Court.  One of those

21   conditions being "participate in a sex offender treatment

22   program."  Mr. Brothers participated in not one, but two.  If

23   the Court recalls, the government has presented information

24   from the sentencing hearing.  He participated in a sex

25   offender treatment program through Dr. Alan Pass.  If the

1    government has no objection, I would move for the admission of

2    the transcript as Defendant's Exhibit C.  If the Court wants

3    to refer to it and refresh its memory from Dr. Pass's

4    testimony, I'd be happy for the Court to see what he had to

5    say about Mr. Brothers.

6          THE COURT:  I don't think that will be necessary.

7          MR. BROWN:  Okay.  Well, Your Honor, Dr. Pass said

8    that he participated in his program and he was successful.

9    The government referred to the transcript, and I will as well,

10    that Dr. Pass said that he -- according to his testing models,

11    I believe it was either a .07 or .7 risk of recidivism over a

12    15-year period.  And he did say that he should have

13    maintenance.

14          Mr. Brothers did have maintenance.  He went to

15    Project Point of Light, and then that sex offender treatment

16    provider said, as is indicated in Defendant's Exhibit B,

17    "successful completion, no further treatment needed."  Now, it

18    did say though he would benefit from mental health treatment

19    separate and distinct from sex offender treatment.

20          If the Court reads its condition, it's clear that

21    polygraphs and sex offender treatment program, i.e., Project

22    Point of Light, go hand in hand.  "The defendant shall abide

23    by all program rules, requirements, and conditions of the sex

24    offender treatment program."

25          Again, a program approved by the probation officer,

1    including submission of polygraph testing to determine if he's

2    in compliance.  That's what that condition refers to.  The

3    program refers to one of the seven treatment providers

4    approved by the probation office here in the Western District.

5           By comparison is a very popular condition that is

6    imposed by this Court -- I shouldn't say "popular," I should

7    say "common" condition -- is one for drug treatment.  And the

8    Court, I'm sure, recalls that in drug treatment the Court's

9    condition of drug treatment is essentially one and the same.

10   "Drug treatment program approved by the probation officer."

11          But by stark comparison to the sex offender

12   treatment condition, that condition also says "periodic

13   testing," right.  This condition, the sex offender treatment

14   condition, does not say "periodic testing."

15          The condition is one which includes polygraphs as a

16   condition of participation in a sex offender treatment

17   program, i.e., people who are board certified sex offender

18   treatment providers.

19          The government's argued that Standard Condition

20   Number 4 contemplates polygraphs.  I respectfully disagree.

21   If it contemplated polygraphs, it would say "polygraphs."  It

22   does not.  Being truthful and following instructions of a

23   probation officer does not make the leap to polygraphs.  If

24   you were to accept that interpretation, then polygraph is just

25   implicit in the entire conditions, whether they be standard or

1    additional.  And I don't think that's the Court's intent, to

2    have every single supervisee subject to polygraph exams the

3    entire time that they are on supervised release.  The only

4    time "polygraph" is mentioned is in this one paragraph that is

5    of some dispute.  As a result, I'd ask the Court to reject

6    that argument.

7           Additionally, I'd ask the Court to take into

8    consideration there's been no evidence presented that he

9    hasn't followed instructions, that he hasn't been truthful

10    with his probation officer.  Really, the testimony here has

11    been -- the testimony that was provided is really about the

12    policies and the views of the probation office, as indicated

13    by Mr. Gawlinski.

14           The government also argued, Your Honor, that the

15    Third Circuit recognized that polygraphs are a tool.  That's

16    the *Lee* case from their brief.  In the *Lee* case a polygraph

17    was ordered as a condition of supervision in that case.  And

18    the defendant in that case made a Fifth Amendment challenge to

19    polygraphs and whether or not it violated his Fifth Amendment

20    right.  And the Court said that in that context they weren't

21    going to say that it was a violation of his Fifth Amendment

22    rights, and the condition was permitted.

23           But here what I'm saying is is that the blanket

24    "you can polygraph my client any day you want" does not exist.

25    What the Court's condition says is that polygraphs are a

1    condition of him participating in a sex offender treatment

2    program.  Not as defined by an individual probation officer,

3    but as defined by the Court.  And that if you look at the

4    words and how they're connected, those words suggest that "sex

5    offender treatment program" means somebody who knows what

6    they're doing in the treatment of sex offenders.

7            And what's interesting is none of those folks,

8    whether it be Dr. Pass who testified, said you know what, he

9    needs to have polygraphs.  None of them.  They say the word

10   "maintenance," but they don't say that he needs to be

11   subjected to polygraphs.  The social worker from Project Point

12   of Light doesn't say that, nor does Dr. Pass.

13           Your Honor, it is our position that the inclusion

14   of polygraphs amounts to a modification of an existing

15   condition.  If the probation office finds that such a

16   condition is necessary in this case, that there are a change

17   in circumstances that under 3583 and the 3553(a) factors

18   listed in that statute somehow warrant a modification, the

19   probation office should file a request and then it can be

20   particular to this defendant.

21           I know this Court's aware that the Third Circuit

22   found that the conditions of supervision have to be reasonably

23   related to the offense and the offender.  And when the Court

24   imposed this condition, it did not find that periodic

25   polygraphs was reasonably related to this particular offender.

1          If there are circumstances that have changed that

2     warrant a change, then the probation office should file a

3     modification.  We talked about that, and that idea was

4     rejected because it is, as you've heard, the probation

5     office's position and interpretation of this condition that

6     the condition of polygraphs exists as-is.

7              Finally, Your Honor, the government has argued --

8     and I think a lot of this is based on the generalized fear of

9     sex offenders.  The probation officer testified that, you

10    know, these conditions are ones that, you know, are imposed in

11    97 percent of sex offender cases and, you know, the terms of

12    people being released -- can't really name one who's been

13    released from the supervised release, i.e., sex offender

14    treatment program -- is on the fear of high risk of recidivism

15    by sex offenders.  The Court has the sentencing transcript --

16    or has heard from Dr. Pass in the sentencing at just how low a

17    risk he is, and hasn't heard from anybody in the field of sex

18    offender treatment that suggests that polygraphs are needed as

19    "maintenance" because that's how we do things, nor does the

20    Court order it.

21             I think that the conditions have to be particular

22    to Mr. Brothers.  This condition as stated suggests polygraphs

23    as a condition of sex offender treatment, and it does not say

24    anything more than that.  And, therefore, we'd ask the Court

25    to determine that polygraphs, annual polygraphs, weekly

1    polygraphs, monthly polygraphs, polygraphs at-will is not what

2    the Court imposed when it imposed it.

3              That's all I have.

4              THE COURT:  Mr. Valkovci, do you have any rebuttal?

5              MR. VALKOVCI, JR.:  Briefly, Your Honor.

6              Your Honor, I submit that the Standard Condition

7    Number 4 does contemplate polygraphs.  A polygraph is many

8    things.  If you have a drug case and an incident arises that

9    would lead the probation officer to request a polygraph

10   because it dealt with certain information, certain evidence or

11   something like that, would the probation officer have the

12   ability to invoke Standard Condition Number 4?  I submit he

13   would, Your Honor.

14             As recognized in the government's brief, A

15   sentencing court must use categorical terms to frame the

16   contours of supervised release conditions.  It is impossible,

17   the court recognized, to expect a sentencing court, especially

18   within the context of this type of a case -- "this type of a

19   case" referenced by the court was a sex offender case.  "It is

20   impossible to expect a sentencing court to fashion a condition

21   that could account for every possible potential scenario of

22   prohibition that a defendant can devise."

23             Conditions of supervised release "do not have to be

24   cast in letters six feet high, or to describe every possible

25   permutation, or spell out every last self-evident detail for

1    them to provide adequate and fair notice."

2         Counsel injected a new argument into his position a

3    few moments ago by saying that the polygraph condition doesn't

4    specifically apply to Mr. Brothers.  Mr. Brothers pled guilty

5    to possession of images depicting the sexual exploitation of

6    children.  His base offense level was enhanced because it was

7    determined that he had over 1500 such images.  His base

8    offense level was further enhanced because the images depicted

9    prepubescent minors being raped and engaging in sexual acts.

10   His base offense level was further enhanced because it

11   depicted sadomasochistic portrayal of minors.

12        Oh, it perfectly applies to him.  There's a very

13   solid basis for why we have these restrictions on him, and we

14   have to have this close supervision for 15 years, Your Honor.

15   If nothing more, it's the factors I just related to the Court.

16        Yes, Dr. Pass said he is a low risk.  But again,

17   we're parsing the language.  We're selectively quoting the

18   language.  Dr. Pass said he is a low risk as long as he is on

19   a maintenance program.  The two go hand in hand.

20        As Dr. Pass further testified when asked, well,

21   what is a maintenance program, he said, a maintenance program

22   and a safety program are a little bit different.  The

23   maintenance plan is an oversight plan where the client is held

24   fully accountable.  And that would be a relapse prevention

25   plan.

1          One of the things that was testified to, Dr. Pass

2    said that questions in the past have been raised about

3    utilizing polygraph testing.  We do polygraph testing

4    postconviction for compliance.  But he doesn't need it now

5    because he completed a few weeks of Project Point of Light?

6    His own expert at sentencing uses it for compliance to sexual

7    offender treatment.

8          He also testified, he said, "I believe the factor

9    that is most important for the Court to consider here for

10   rehabilitation" -- according to Mr. Gerson, "was the continued

11   ongoing education and rehabilitation of Mr. Brothers."  That

12   didn't cease, and it won't cease and hasn't ceased just

13   because he was discharged from Project Point of Light.

14         There is no need for change.  There is no need for

15   modification.  There is no changed circumstances, Your Honor.

16   The meaning of the words are patent.  "Program," regardless of

17   how it's defined, includes the entire period of supervision

18   because it's an ongoing treatment program.  It's an ongoing

19   curriculum from which he's not been discharged.

20         Thank you.

21         THE COURT:  Anything further?

22         MR. BROWN:  Briefly, if the Court would permit.

23         I neglected to respond to this, but it was brought

24   up again on rebuttal, was a few weeks -- the statement "A few

25   weeks at Project Point of Light."  I don't think that

1    Mr. Brothers' participation in that program was limited to a

2    few weeks.  He was released in August of 2012, and he was

3    discharged from the program successfully in July 2013.  I'm

4    not sure what the date is in 2012, but it's my understanding

5    that he started that program at some point in time in 2012,

6    and completed it successfully in July of 2013.  So a few weeks

7    is not accurate.

8            The government has brought up conditions -- or

9    circumstances of the offense in an effort to support its

10   position that this condition states periodic polygraphs are

11   authorized in support.  I do respectfully argue that many sex

12   offender cases in general the supervision is based in large

13   part on fear of recidivism.  We have folks saying, in the

14   business of sex offender treatment, that the recidivism risks

15   are low.  That Dr. Pass says he should have a maintenance

16   program.  It doesn't say "polygraphs," it says he should have

17   a "maintenance program."

18           He then goes to Project Point of Light.  Project

19   Point of Light says, "He successfully completed our four

20   phases of treatment, but he needs continued mental health

21   treatment."

22           And we don't have anybody here saying that

23   polygraphs are necessary.  Again, the condition has to be

24   reasonably related to the defendant and involve no greater

25   deprivation of liberty than is reasonably necessary.  And if

1    the Court determines, upon a motion for modification, that it

2    is reasonably necessary in this particular case, then it's

3    rightfully imposed.

4            But when this Court imposed this condition back in

5    2012, it did not order periodic polygraph testing as an

6    existing condition.  And the idea that the probation office is

7    somehow not going to be able to make sure he's complying, I

8    don't know what that's based on.  I mean there's a lot of

9    conditions.  "The defendant shall answer truthfully all

10   inquiries and follow instructions."  Does that mean that

11   everybody who's a supervisee gets subject to a polygraph?  You

12   know, I don't think it says that.

13           There's a reason the word "polygraph" is in that

14   one condition, and that's because it's tied to him getting

15   board certified sex offender treatment.  He's not currently in

16   board certified sex offender treatment and, therefore, the

17   polygraph condition was not contemplated by this Court and not

18   included by this Court in its original order.

19           Therefore, we would ask the Court to find that

20   annual polygraph -- periodic polygraphs are not warranted in

21   this particular case because there's no evidence to support

22   that it should be added or modified as a condition of

23   Mr. Brothers' existing conditions of supervision.

24           THE COURT:  Anything further?

25           MR. VALKOVCI, JR.:  Your Honor, quite frankly, if

1    the Court's going to give me the opportunity -- I don't think

2    the Court should do that to a lawyer because, of course, I'll

3    stand up and talk some more if you want me to to address one

4    or two of the points raised by Mr. Brown.  But if the Court

5    would give me that leeway then sure, but if not, I'll sit

6    down.

7              THE COURT:  Well, I think I have heard the

8    positions of the parties, and I understand the positions of

9    the parties.

10             Given the nature of this issue and the need for

11   this issue to be clarified, I will not take this under

12   advisement but I will issue an order from the bench.

13             Now, this 4th day of March 2015, this matter coming

14   before the Court on defendant's motion for hearing to clarify

15   conditions of supervised release, and following hearing and

16   arguments of counsel, the Court makes the following findings:

17             Given the nature of the offense, namely, possession

18   of child pornography in violation of 18 United States Code,

19   Section 2252(a)(4)(B), a long-term treatment and monitoring

20   program to address the needed sex treatment and mental health

21   treatment was envisioned and intended by the Court when

22   imposing the conditions of supervision.  The defendant is

23   still in that program, and has not been released from that

24   program by the Court.

25             The treatment program referenced in the conditions

1    of supervision encompasses more than one or more providers'

2    treatment regimen.  Rather, this program also involves

3    rigorous long-term monitoring.

4            The requirement of continuing polygraphs

5    constitutes a reasonable measure to enable probation to

6    monitor and assure compliance with conditions of supervision,

7    both standard and additional.  Therefore, this condition was

8    included in the conditions of probation.

9            Accordingly, it is hereby ordered that the

10   requirement of periodic polygraphs was intended to be and, in

11   fact, is an existing condition of supervision in this case.

12           This completes the order.

13           I am not making this part of the order, but I will

14   note that this is not necessarily a 15-year requirement for

15   polygraphs.  That is really something that the probation

16   officer needs to evaluate.  And if, in fact, polygraphs are

17   not deemed to be necessary any further, the probation

18   department can determine that they need not be utilized.

19           If the probation department chooses to, it can then

20   request the Court to approve that termination of polygraphs,

21   or the probation department can, in its discretion, determine

22   that they are no longer needed.  I will leave that to the

23   discretion of the probation officers, in consultation with the

24   United States Attorney's Office if deemed necessary.

25           I believe this was an appropriate issue to raise,

```
 1    and the hearing was appropriate in that, as I pointed out

 2    earlier, I think it would be unfair to require the defendant

 3    to be brought in for a violation for this issue without having

 4    the Court with certainty state what the condition is.

 5              Do either of counsel have anything additional at

 6    this point?

 7              MR. VALKOVCI, JR.:  No, Your Honor.

 8              MR. BROWN:  No.  No, sir.

 9              THE COURT:  Then that concludes this proceeding,

10    and we will be in recess until call of Court.

11              (Proceedings concluded at 12:49 p.m.)

12                            *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    CERTIFICATE OF OFFICIAL REPORTER

2

3         I, Kimberly K. Spangler, Federal Official Court

4    Reporter, in and for the United States District Court for the

5    Western District of Pennsylvania, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code, that

7    the foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter, and that the transcript page format is

10   in conformance with the regulations of the Judicial Conference

11   of the United States.

12

13                    Dated this ____ day of _____ 2015

14

15         _____
            KIMBERLY RUSHLOW SPANGLER, RPR
16         FEDERAL OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25